BOSTON RUBBER SHOE COMPANY *vs.* ALBERT L. GORDON.

Suffolk.    January 11, 1901. — April 8, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

In an action by an indorsee of a promissory note against the maker, the defendant undertook to show that the note was without consideration as between the maker and the payee and that the plaintiff took it from the payee after maturity.    The payee and indorser of the note who was a brother of the maker appeared as a witness for the defendant.    In the course of his cross-examination the plaintiff's counsel produced a paper, showed it to the witness, and asked the question: "Will you swear that is not a copy of the entry from your own journal?"    The witness answered "Well, I have n't my journal.    I can't swear to copies of entries in my journal."    The cross-examining counsel then put the question: "If your journal contains this entry: Bank of England, September 12, 1896, two hundred pound and six hundred and six pounds, ten shillings, eleven pence, paid A. Gordon, to go against which is the note of $3,871.42, payable in any bank in Massachusetts, — don't you suppose there was a transaction behind it?" and the witness answered "I cannot swear anything about my journal."    The paper was not put in evidence.    *Held*, that the foregoing question was a natural and legitimate step in the cross-examination, and that it did not assume or imply that there was such an entry, and that it was competent for the jury to consider the answer of the witness on the question of his credibility.

In an action by an indorsee of a promissory note against the maker, the defendant undertook to show that the note was without consideration as between the maker and the payee and that the plaintiff took it from the payee after maturity.    The payee and indorser of the note who was a brother of the maker appeared as a witness for the defendant.    In the course of his cross-examination the plaintiff's counsel produced a paper and asked the witness "And on the same date you signed the paper of which that is a copy?"    The answer was "I don't know. I can't say," and the paper was not offered in evidence.    The plaintiff's counsel was then permitted, against the defendant's objection, to ask the following question: "Did n't you go to the Bank of England with Mr. Kekewich or some representative of that firm and Mr. Leland, and there do what was said to be necessary in order to transfer to Mr. Leland all that you had in the Bank of England in the way of money and accounts and notes and papers?"    The witness replied "I signed something in the Bank of England."    Mr. Leland was the treasurer of the plaintiff, a corporation.    *Held*, that the question related to the character of a certain transaction and not to the contents of a written instrument, and that if the answer meant that the witness did not sign anything conveying the note, then the question and answer did no harm, whereas if the answer was an implied admission that he did sign a paper necessary to convey the note, then the answer was admissible, not as tending to show the contents of a written instrument, but as tending to affect the credibility of the witness's previous statement, that the note was always under his control as long as it remained in the Bank of England.

CONTRACT by a purchaser and indorsee of a promissory note for $3,871.42 against the maker.   Writ dated January 27, 1897.

At the trial in the Superior Court, before *Blodgett*, J., the plaintiff introduced the note, and the signature and indorsement being admitted rested its case.   The defendant himself testified and called his brother Alvin J. Gordon, the payee and indorser to the plaintiff of the note, for the purpose of proving the defences relied on, which were that the note was without consideration as between the maker and the payee, and that the plaintiff, if the holder of the note, took it after maturity and without the payment of value.

The exceptions related to two questions asked Alvin J. Gordon on his cross-examination, and are fully stated in the opinion of the court.   The plaintiff's counsel contended among other things that upon the evidence the testimony of the witnesses for the defence was not true and that the defences were not sustained.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which, after the resignation of *Blodgett*, J., were allowed by *Braley*, J.

The case was argued at the bar in January, 1901, and afterwards was submitted on briefs to all the justices.

*C. R. Darling*, for the defendant.

*M. Storey*, for the plaintiff.

MORTON, J.   This is an action upon a negotiable note against the maker.   The defence is that the note was an accommodation note, and that the plaintiff was not a purchaser for value before maturity.   The payee of the note, who was also the indorser, was a witness for the defendant, and the exceptions relate to certain questions which were allowed to be put to him on cross-examination.   Not all of the evidence is reported.

The witness testified that he received the note from the maker and put it with other drafts, notes and checks in the Bank of England.   Various questions were asked him on cross-examination for the purpose of showing that he had negotiated the note with the Bank of England, and had received credit for the proceeds, and in the course of the examination counsel for the plaintiff produced a paper, showed it to the witness and asked the question, " Will you swear that it is not a copy of the

entry from your own journal?" The witness answered, "Well, I have n't my journal. I can't swear to copies of entries in my journal." There was no objection to the question or the answer. Thereupon the counsel asked the following question, "If your journal contains this entry: Bank of England, September 12, 1896, two hundred pound and six hundred and six pounds, ten shillings, eleven pence, paid A. Gordon, to go against which is the note of $3,871.42, payable in any bank in Massachusetts, — don't you suppose there was a transaction behind it?" The witness answered, "I cannot swear anything about my journal." The paper was not put in evidence. The question was duly excepted to.

The objection is that it was an attempt to manufacture testimony by assuming or implying a book entry of which there was no evidence. Plainly the presiding judge did not so regard it or he would not have allowed the question to be put. Whether there was in the books of the witness such an entry as was described, or had been such a transaction manifestly bore on the question whether the note was an accommodation note and were proper subjects of inquiry from the witness. It would have been competent to ask him whether there was such an entry on his books or had been such a transaction. Instead of doing that counsel showed him a paper and asked him without objection if that was not a copy of an entry from his books. The witness replied in substance that he could not tell. The paper was not offered or put in evidence. Then came the question objected to, and the substance of it was, that, if there was such an entry, was there not a transaction behind it. In view of the previous question and answer it was a natural and legitimate step in the examination. The question did not assume or imply that there was such an entry. As proof that there was such an entry, it amounted to nothing. But it was open to the witness to deny that there had been such a transaction and consequently that there was or could be such an entry. And it was competent for the jury to consider his answer on the question of his credibility. Moreover, judging from a portion of the cross-examination contained in the bill of exceptions, it is not unreasonable to suppose that the presiding judge may have thought, and justly so, that the witness was untruthful, or evasive and uncandid in his answers

to the questions that were put to him.   He was the brother of the defendant and the payee and indorser of the note.   The matters relating to the defence were such as to be peculiarly within the knowledge of the defendant and the witness.   Under the circumstances it does not seem to us that the presiding judge exceeded the just limits of his discretion in allowing the question to be put.

Some of the considerations to which we have adverted apply to the remaining question which was excepted to.   Counsel for the plaintiff produced a paper and asked the witness, " And on the same date you signed the paper of which that is a copy ? " The answer was, " I don't know.   I can't say."   The paper was not offered in evidence, and there was no objection to the question.   Then the question that was excepted to was put: " Did n't you go to the Bank of England with Mr. Kekewich or some representative of that firm and Mr. Leland, and there do what was said to be necessary in order to transfer to Mr. Leland all that you had in the Bank of England in the way of money and accounts and notes and papers ? "   The witness answered, " I signed something in the Bank of England."   The objection is that the question called for the contents of a writing.   But, in the first place, it seems to us that the question related to the character of a certain transaction and not to the contents of a written instrument.   In the next place, if the answer of the witness was understood as meaning, as perhaps it might have been, that he did not sign anything conveying the note then the question and answer did no harm.   Again, if the answer was taken as an implied admission that he did sign a paper which was said to be necessary to convey the note, then the answer was admissible, not as tending to show the contents of a written instrument, but as tending to affect the credibility of his previous statement that the note was always under his control so long as it remained in the Bank of England.   It seems to us that the question and answer were plainly admissible.

*Exceptions overruled.*